An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-678
NORTH CAROLINA COURT OF APPEALS

Filed: 4 March 2014

STATE OF NORTH CAROLINA

v.                                    Randolph County
                                      No. 09 CRS 56732
MATTHEW ALLEN BARNHILL
    Defendant.


Appeal by defendant from judgment entered 24 October 2011 by Judge Edgar B. Gregory in Randolph County Superior Court. Heard in the Court of Appeals 20 November 2013.


*Roy Cooper, Attorney General, by Marc X. Sneed, Assistant Attorney General, for the State.*

*Unti & Lumsden LLP, by Sharon L. Smith, for defendant-appellant.*


DAVIS, Judge.


Defendant Matthew Allen Barnhill ("Defendant") appeals from his conviction for felony possession of marijuana. On appeal, Defendant argues that the trial court erred in denying his motion to suppress evidence obtained during a warrantless search of his home. After careful review, we affirm the trial court's denial of the motion to suppress.

**Factual Background**

On 23 November 2009, Detective Ed Carter ("Detective Carter") and Corporal Andrea Paige Jackson ("Corporal Jackson") of the Randolph County Sheriff's Office visited Defendant's apartment to investigate an anonymous tip that prescription drugs were being sold from the residence. The purpose of the visit was to conduct a "knock and talk" in the hope of obtaining consent to search the residence. Detective Carter knocked on the door and a male child, who was approximately five years old, opened the door. Detective Carter took one step into the home at which point Jennifer Barnhill ("Mrs. Barnhill"), Defendant's wife, came to the door from the living room area. Detective Carter identified himself as a detective with the Randolph County Sheriff's Office and informed Mrs. Barnhill that the Sheriff's Office had received a complaint that drugs were being sold from the home.

Detective Carter asked about her husband's whereabouts, and Mrs. Barnhill stated that he was at the gas station. She also told the officers that Defendant had recently experienced problems with crack cocaine and prescription pills and that she was afraid of him. Detective Carter asked if there were any illegal substances in the home, and Mrs. Barnhill replied

affirmatively. When Detective Carter asked her to bring the illegal substances to him, Mrs. Barnhill inquired whether he had a search warrant. Detective Carter responded that they did not possess a warrant but that they could go apply for one.

Mrs. Barnhill then agreed to the search, completing and signing a Voluntary Consent to Search form, which indicated her consent to a search of the residence. During her search of a bedroom in the home, Corporal Jackson located and seized two plastic bags containing green vegetable matter, a set of digital scales, plastic baggies, bottles containing pills, several "burnt marijuana roaches," and glass smoking devices.

Mrs. Barnhill and Defendant were both criminally charged, and each of them filed motions to suppress the evidence obtained during the search of the residence. The trial court heard the motions to suppress simultaneously on 3 March 2011 and denied both motions. Defendant pled guilty to felonious possession of marijuana while expressly reserving his right to appeal the denial of his motion to suppress.

In an unpublished opinion, this Court dismissed Defendant's appeal for failure to properly appeal from a final judgment as required by N.C. Gen. Stat. § 15A-979(b). *See State v. Barnhill*, No. COA12-264, ___ N.C. App. ___, ___ S.E.2d. ___

(filed Oct. 16, 2012) (unpublished). Defendant subsequently filed a petition for writ of certiorari with this Court on 23 October 2012, and on 14 November 2012, this Court granted his petition.

## Analysis

Defendant's sole argument on appeal is that the trial court erred in denying his motion to suppress because Mrs. Barnhill did not give voluntary consent to the search of their home. Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982).

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *State v. Smith*, 346 N.C. 794, 798, 488 S.E.2d 210, 213 (1997) (citation and quotation marks omitted). However, it is also well established that consent is a recognized exception to the general warrant requirement contained in the Fourth Amendment and Article I, § 20 of the

North Carolina Constitution. *State v. Jones*, 96 N.C. App. 389, 397, 386 S.E.2d 217, 222 (1989), *appeal dismissed and disc. review denied*, 326 N.C. 366, 389 S.E.2d 809 (1990). "For the warrantless, consensual search to pass muster under the Fourth Amendment, consent must be given and the consent must be voluntary." *Smith*, 346 N.C. at 798, 488 S.E.2d at 213. "The only requirement for a valid consent search is the voluntary consent given by a party who had reasonably apparent authority to grant or withhold such consent." *State v. Houston*, 169 N.C. App. 367, 371, 610 S.E.2d 777, 780, *appeal dismissed and disc. review denied*, 359 N.C. 639, 617 S.E.2d 281 (2005). "Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49, 36 L.Ed.2d 854, 875 (1973). When determining whether consent was voluntarily given, the trial court considers the totality of the circumstances. *Smith*, 346 N.C. at 798, 488 S.E.2d at 213.

In determining whether consent to a search was voluntary, "the weight to be given the evidence is . . . a determination

for the trial court, and its findings are conclusive when supported by competent evidence." *State v. Hernandez*, 170 N.C. App. 299, 310, 612 S.E.2d 420, 427 (2005) (citation and quotation marks omitted). Here, the trial court concluded, as a matter of law, that Mrs. Barnhill's consent to search the home was freely and voluntarily given based on the trial court's oral findings of fact stating in pertinent part as follows:

> Detective Ed Carter with the Randolph County Sheriff's Office – a detective with the Randolph County Sheriff's Office vice/narcotics unit went to the home of Jennifer and Matthew Barnhill . . . in Thomasville on November 3rd, 2009, for the purpose of conducting a knock-and-talk. That the reason they went there was because of a[n] anonymous report that prescription drugs were being sold from this residence.
>
> That Detective Carter was accompanied by Corporal Andrea Paige [Jackson] . . . also with the Randolph County Sheriff's Office.
>
> That Detective Carter approached the residence first through the back door while Officer Jackson sat in the car. A brick apartment building; that the door contained some glass in it and he could see one child in the kitchen area that was approximately five years old. He knocked on the door and the child opened the door.
>
> As he – as the door was opened, he could see the mother coming from another inside room from the house. He made one step into the kitchen as the door was opened and informed Mrs. Jennifer Barnhill that he was an officer with the Sheriff's Department of

Randolph County and that they had a complaint of drugs being sold from that residence from an anonymous source.

Mrs. Barnhill took the two children to the bedroom, and as she was coming back into where Mr. Carter was standing, Officer Jackson was approaching the door and attempted to step in. . . .

Both officers testified that Mrs. Barnhill appeared calm and rational. That Officer Carter stated to Mrs. Barnhill that she might remember him from the previous search that was done of the Barnhills in 2007.

Mrs. Barnhill indicated that she was afraid of her husband, that he'd been going on binges for some days at a time; that he'd left earlier that day, some hours before, that . . . he had been arrested for committing a threat -- communicating threats and that she regretted getting him out of jail just some days before. She also admitted to the officers that she smoked weed -- that she and her husband both smoked weed and that she understood "weed" meant marijuana. So did the officers. She also said she didn't want to get in trouble for it.

The officers asked . . . she was asked if she had drugs in the house, and she asked if they had a search warrant and was told by the officers that they could apply for one or they could get one. There's some dispute about what was actually said, but there was a conversation about getting a search warrant. She informed the officers that . . . there [were] drugs in the house or paraphernalia or contraband, and she had told the officers she would go get the drugs and contraband.

Both officers stated that there were no threats made to her and she did not appear afraid or upset. Mrs. Barnhill signed a Voluntary Consent to Search which clearly stated in bold letters at the top it was a Voluntary Consent to Search, and which she signed saying she was voluntarily consenting that Ed Carter of the Randolph County Sheriff's Office may search [the home].

She went to the bedroom and moved the children, and then she and Ms. Jackson went to the bedroom where Ms. Jackson stated that there was some paraphernalia laying in plain sight in the room. And all the items shown on the inventory that was introduced as State's Exhibit 2 [were] taken from the residence, voluntarily turned over to the officers by Jennifer Barnhill. . . .

The trial court then made the following oral conclusions of law:

Based on the foregoing findings of fact, the Court concludes as a matter of law that the consent given by [Mrs. Barnhill] to search the house was freely and voluntarily given.

Based on the foregoing findings of fact and conclusions of law . . . . Motion to Suppress in both cases is denied.

The trial court also entered a written order on 3 March 2011 stating that "[b]ased upon the findings of fact, conclusions of law and orders more fully found in the record for the hearing of this matter the Motions to Suppress made in each of the two files (1) State Vs. Jennifer Barnhill . . . and (2)

State Vs. Matthew Barnhill . . . are hereby denied."[1]

Defendant has not specifically challenged any of the trial court's oral findings of fact; thus, they are binding on appeal. *See State v. Moses*, 205 N.C. App. 629, 633, 698 S.E.2d 688, 692 (2010) ("Defendant has not challenged any of the trial court's oral findings of fact. As a result, our review of the trial court's denial of defendant's motion to suppress is limited to whether the unchallenged findings of fact ultimately support the trial court's conclusions of law."). Therefore, the only remaining issue is whether these findings support the trial court's ultimate conclusion that Mrs. Barnhill gave voluntary consent for Detective Carter and Corporal Jackson to search her home.

As our Supreme Court has explained,

> "[k]nock and talk" is a procedure utilized by law enforcement officers to obtain a consent to search when they lack the

---

[1] The Order did not memorialize the trial court's oral findings of fact and conclusions of law in writing. However, we need not address the lack of written findings of fact or conclusions of law because Defendant offers no argument on this issue. *See* N.C. R. App. P.28(a) ("The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned."); *State v. Watkins,* ___ N.C. App. ___, ___, 725 S.E.2d 400, 403 (citing N.C. R. App. P.28(a) and declining to address absence of a written order denying motion to suppress where defendant did not raise issue on appeal), *appeal dismissed,* 366 N.C. 241, 731 S.E.2d 416 (2012).

> probable cause necessary to obtain a search warrant. That officers approach a residence with the intent to obtain consent to conduct a warrantless search and seize contraband does not taint the consent or render the procedure *per se* violative of the Fourth Amendment.

*Smith*, 346 N.C. at 800, 488 S.E.2d at 214.

When Detective Carter knocked on the door to conduct the "knock and talk," the son of Mrs. Barnhill and Defendant opened the door and let him in. As Detective Carter stepped into the residence, Mrs. Barnhill came to the entryway from the living room area, and the two began to talk. When Detective Carter asked Mrs. Barnhill if there were illegal drugs in the home, she responded that there were but she did not want to get in trouble for it. She then asked if Detective Carter had a warrant, and he replied that he did not. Detective Carter mentioned the possibility of obtaining a search warrant and, at that point, Mrs. Barnhill consented to the search and completed a Voluntary Consent to Search form.

Although Mrs. Barnhill testified that she did not understand that she could tell Detective Carter and Corporal Jackson to leave her home, the trial court determined, based on their testimony, that Mrs. Barnhill appeared calm and unafraid when she told them she would get the drugs and when she signed

the consent form.  *See Houston*, 169 N.C. App. at 371, 610 S.E.2d at 781 ("The evidence presented tended to show defendant did not appear nervous or scared, was 'cooperative,' led the officers to the bedroom, . . . was not threatened by the officers and was present throughout the search and gave no indication he wished to revoke his consent.").  While the trial court noted that there was "some dispute" about whether Detective Carter told Mrs. Barnhill that he could "apply" for a warrant or "get" a warrant, the evidence and the trial court's findings based on the evidence indicate that (1) Detective Carter explained that he did not presently have a search warrant; and (2) Mrs. Barnhill was not threatened or coerced by Detective Carter or Corporal Jackson when they asked for her consent to search the home.

We are unpersuaded by Defendant's assertion that Mrs. Barnhill's consent to the search of her home was not voluntarily and freely given because of Detective Carter's statement insinuating that he could successfully obtain a search warrant. Defendant argues that Detective Carter's testimony at the suppression hearing that he did not have sufficient information to obtain a search warrant at the time he conducted the "knock and talk" indicates that he purposefully misled Mrs. Barnhill

when he implied that he could obtain such a warrant. While Detective Carter acknowledged in his testimony that he did not have probable cause at the time he knocked on the Barnhills' door, he only indicated that he could "apply" or "get" a warrant *after* Mrs. Barnhill admitted that there was contraband in the home. Given Mrs. Barnhill's admission to him that there were illegal substances within the residence, it is likely that at that point in time, Detective Carter did, in fact, have sufficient information to obtain a warrant. Consequently, any statement by him to Mrs. Barnhill expressing confidence in his ability to obtain a warrant would not have been misleading.

Defendant's reliance on *State v. Barnes*, 158 N.C. App. 606, 582 S.E.2d 313 (2003), is misplaced. In *Barnes*, law enforcement officers followed the defendant into a house after he jumped up from his chair on the porch in a frightened manner upon seeing the officers approaching and retreated into the house. *Id.* at 608, 582 S.E.2d at 316. This Court held that the officers' actions in following the defendant into the house constituted a warrantless, nonconsensual search and required the suppression of any evidence obtained as a result of the search. *Id.* at 611, 582 S.E.2d at 317. We concluded that the officers did not have a lawful right to be present in the home and that the trial

court had erred in ruling that "the mere entry into the house by law enforcement officers was not a search within the meaning of the Fourth Amendment." *Id.* at 610, 582 S.E.2d at 317 (internal quotation marks omitted).

Here, conversely, the trial court found — based on competent evidence — that Detective Carter (1) visited Defendant's residence to conduct a "knock and talk;" (2) knocked on the door; (3) took one step into the home after being let in by Defendant's minor child; (4) spoke to Mrs. Barnhill for several minutes about the complaint the Sheriff's Office had received; (5) requested and was given Mrs. Barnhill's consent to search the home; and (6) obtained a consent form voluntarily signed by Mrs. Barnhill consenting to the search. Accordingly, we conclude that the trial court did not err in ruling that under the totality of the circumstances, Mrs. Barnhill's consent was voluntarily given and that, therefore, the search of Defendant's home did not violate the Fourth Amendment.

## Conclusion

For the reasons stated above, we affirm the trial court's order denying Defendant's motion to suppress.

AFFIRMED.

Judges ELMORE and McCULLOUGH concur.

Report per Rule 30(e).